STEPHEN CHA-KIM* (NY - 4979357)
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019-9710
Telephone: 212.836.8000
Email:  stephen.cha-kim@arnoldporter.com

CARSON ANDERSON (CA - 317308)
ARNOLD & PORTER KAYE SCHOLER LLP
3000 El Camino Real
Five Palo Alto Square, Suite 500
Palo Alto, CA  94306-3807
Telephone: 650.319.4500
Email:  carson.anderson@arnoldporter.com

NATALIE STEIERT* (DC - 90010655)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington,  DC 20001-3743
Telephone: 202.942.5000
Email:  natalie.steiert@arnoldporter.com

OREN NIMNI* (MA - 691821)
AMARIS MONTES* (MD - 2112150205)
RIGHTS BEHIND BARS
416 Florida Avenue N.W. #26152
Washington, D.C.  20001-0506
Telephone:     (202) 455-4399
Email:          oren@rightsbehindbars.org
                     amaris@rightsbehindbars.org

SUSAN M. BEATY (CA - 324048)
CALIFORNIA COLLABORATIVE FOR
IMMIGRANT JUSTICE
1999 Harrison Street, Suite 1800
Oakland, California  94612-4700
Telephone:     (510) 679-3674
Email: susan@ccijustice.org

MARK RAFTREY (CA - 352610)
BROOKE D'AMORE BRADLEY (CA - 353030)
ARNOLD & PORTER KAYE SCHOLER LLP
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111-4024
Telephone: 415-471-3361
Email:  mark.raftrey@arnoldporter.com
brooke.damorebradley@arnoldporter.com

*Pro hac vice pending

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| Z.T.S.,<br><br>      Plaintiff,<br><br>    v.<br><br>UNITED STATES OF AMERICA; UNITED STATES OF AMERICA FEDERAL BUREAU OF PRISONS, a governmental entity; and SINCLAIR,<br><br>      Defendants. | **COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

# TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................................................1

THE PARTIES ...........................................................................................................................2

CONDITIONS PRECEDENT TO FEDERAL TORT CLAIMS ACT CLAIMS ...........................5

JURY DEMAND ........................................................................................................................5

FACTUAL ALLEGATIONS .......................................................................................................6

I.      Federal Law Requires BOP to Take Action to Prevent and Appropriately Respond
        to Reports of Staff Sexual Misconduct ...........................................................................6

II.     FCI Dublin Leadership and Staff Allowed Sexual Assault to Flourish ...............................8

III.    Plaintiff was Harassed and Assaulted By Defendant SINCLAIR While She Worked
        In the Kitchen ...............................................................................................................11

CLAIMS FOR RELIEF ...........................................................................................................13

PRAYER FOR RELIEF ...........................................................................................................23

COMPLAINT

Plaintiff Z.T.S. ("Plaintiff"), by and through her attorneys allege against the Defendants as above captioned as follows upon information and belief:

**INTRODUCTION**

1.      For years, people incarcerated at the Federal Correctional Institute, Dublin ("FCI Dublin"), a federal female low-security prison with an adjacent satellite camp, have been subjected to rampant, horrific, and ongoing sexual abuse that continues to this day, including but not limited to: rape and sexual assault; manipulation and sexual coercion, including officers entering into relationships with incarcerated individuals and officers forcing incarcerated individuals to undress in order to be released from cells or for exchange of goods; degrading sexual comments; voyeurism; taking and sharing explicit photos; drugging, groping, and other forms of abuse during medical exams; and targeted abuse towards immigrants under threat of deportation.  The Federal Bureau of Prisons ("BOP") and employees at every level have been aware of these problems for decades and have failed, and continue to fail to take action to protect those in its care by preventing and addressing rampant staff sexual misconduct.

2.      The staff sexual abuse at FCI Dublin became the center of a sprawling criminal investigation, multiple Congressional inquiries, and national media attention.  The United States Senate's Permanent Subcommittee on Investigations devoted multiple hearings to addressing its causes and impact, and issued a report in December 2022 describing the abuse as "horrific" and Defendant BOP's investigative practices as "seriously flawed," and concluding that "BOP management failures enabled continued sexual abuse of female prisoners by BOP's own employees."[1]

3.      Congress enacted the Prison Rape Elimination Act in 2003, 34 U.S.C. § 30301, *et seq.* ("PREA") to establish national standards for preventing precisely this kind of sexual abuse from happening to incarcerated people.  Under PREA, the U.S. Department of Justice promulgated

---

[1] S. PERMANENT SUBCOMM. ON INVESTIGATIONS, REP. ON SEXUAL ABUSE OF FEMALE INMATES IN FEDERAL PRISONS, 1 (Dec. 13, 2022), https://www.hsgac.senate.gov/wp-content/uploads/imo/media/doc/2022-12-13%20PSI%20Staff%20Report%20-%20Sexual%20Abuse%20of%20Female%20Inmates%20in%20Federal%20Prisons.pdf (hereinafter "Senate Report").

COMPLAINT

1  detailed mandatory regulations that provide precise procedures that prisons must follow.  The

2  Federal Bureau of Prisons ("BOP") adopted PREA policies in response to these regulations.

3      4.    Despite these mandatory protections, while incarcerated at FCI Dublin from

4  September 2019 until November 2022, Plaintiff, was physically assaulted by Officer CHAVEZ,

5  called racial epithets and physically threatened by Officer JONES, verbally and sexually assaulted

6  by Defendant SINCLAIR, and was fired from her kitchen job and put into the Secured Housing

7  Unit (SHU) as retaliation.  In doing so, Defendants violated Plaintiff's Constitutional rights and

8  California law on gender violence, sexual assault, and common law on battery.

9      5.    As a result of Defendants' actions, Plaintiff suffered numerous emotional injuries

10  and incurred severe personal injuries, which continue to affect her today.

11      6.    Plaintiff brings this suit under the United States Constitution Eighth Amendment's

12  prohibition on cruel and unusual punishment.  Plaintiff also brings this suit under the Federal Tort

13  Claims Act ("FTCA") 28 U.S.C. §§ 2671, *et seq.*, under state law on gender violence and sexual

14  assault, and in connection with the deficient supervision and custodial care provided by various

15  BOP personnel, including Defendant SINCLAIR, and Officers JONES, CHAVEZ, and SMITH,

16  within the scope of their employment within the BOP.

17  **JURISDICTION AND VENUE**

18      7.    This Court has original subject matter jurisdiction in this action involving claims

19  arising under the United States Constitution pursuant to 28 U.S.C. §§ 1331 and 1346(b).

20  Plaintiffs' claims are predicated, in part, upon the FTCA, 28 U.S.C. §§ 2671, *et seq.*, authorizing

21  actions seeking relief against the United States.

22      8.    The Court has personal jurisdiction of the Defendants because the alleged incidents

23  occurred within the confines of the State of California.

24      9.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)(2) and 1402(b) as

25  a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within the

26  boundaries of this District, in the County of Alameda.

27  **THE PARTIES**

28      10.    At all times relevant hereto, Plaintiff was incarcerated in the custody of BOP,

COMPLAINT

incarcerated at FCI Dublin located at 5701 8th St., Dublin, CA 94568.  Plaintiff was transferred to the Northwest ICE Processing Center in Tacoma, Washington where she is still incarcerated today.

11.     Defendant United States of America (hereinafter "United States") is the appropriate defendant for Plaintiffs' claims under the Federal Tort Claims Act.  The United States is a sovereign entity that has waived its immunity for certain claims, including the claims set forth herein, and is liable for the acts or omissions of its agents, servants, contractors, and employees that occur within the scope of their employment.

12.     At all times relevant hereto, Defendant United States, acting through the BOP, was responsible for the operation, control, supervision, policy, practice, implementation, and conduct of all BOP matters including at FCI Dublin and was responsible for the hiring, retention, training, supervision, management, discipline, and conduct of all BOP personnel, including but not limited to Defendant SINCLAIR, and Officers GARCIA, JONES, CHAVEZ, and SMITH

13.     In addition, at all relevant times, United States was responsible for enforcing the rules of the BOP, and for ensuring that BOP personnel obey the Constitution and laws of the United States.

14.     Defendant SINCLAIR ("Defendant SINCLAIR") was an officer at FCI Dublin during the time period relevant to events described herein and is sued in his individual capacity. While performing the acts and omissions that Plaintiffs allege in this complaint, Defendant SINCLAIR was acting within the scope of his official employment, or with the BOP's permission and consent and under color of federal law.

15.     Officer ANDREW JONES ("Officer JONES") was an officer at FCI Dublin during the time period relevant to events described herein.  While performing the acts and omissions that Plaintiffs allege in this complaint, Officer JONES was acting within the scope of his official employment, or with the BOP's permission and consent and under color of federal law.

16.     Officer ENRIQUE CHAVEZ ("Officer CHAVEZ") was an officer at FCI Dublin during the time period relevant to events described herein.  While performing the acts and omissions that Plaintiffs allege in this complaint, Officer CHAVEZ was acting within the scope of

COMPLAINT

his official employment, or with the BOP's permission and consent and under color of federal law.

17.     Officer DARRELL SMITH ("Officer SMITH") Smith was an officer at FCI Dublin during the time period relevant to events described herein.  While performing the acts and omissions that Plaintiffs allege in this complaint, Officer SMITH was acting within the scope of his official employment, or with the BOP's permission and consent and under color of federal law.

18.     Warden RAY J. GARCIA ("Warden GARCIA") was the associate warden at FCI Dublin between December 2018 and November 2020, and the warden of FCI Dublin from November 2020 to July 2021 – a time that overlapped with Plaintiff being abused by Defendant SINCLAIR, and Officers JONES, CHAVEZ, and SMITH.  As the warden, GARCIA was responsible for safekeeping, care, protection, discipline, programming, and release of inmates incarcerated at FCI Dublin.  In his capacity as an agent, servant, and employee of Defendant United States, and within the course and scope of his employment as such, Warden GARCIA was responsible for the day-to-day oversight, supervision, care, custody, control, direction, safety, and well-being of people confined at FCI Dublin, including Plaintiff.  Warden GARCIA was also responsible for hiring, training, and supervising/managing staff, and determining operating procedures and policies.

19.     At all times relevant hereto, Defendant United States, acting through the BOP, hired Defendant SINCLAIR, Warden GARCIA, and Officers JONES, CHAVEZ, and SMITH  to serve as "correctional officers" and "law enforcement officers" within the meaning and powers of 28 U.S.C. § 2680(h).

20.     While acting and failing to act as alleged herein, Defendants had complete custody and total control of Plaintiff, who was dependent upon Defendants for personal security and necessities.

21.     In performing the acts and/or omissions contained herein, Defendants acted under color of federal law, and each acted maliciously, callously, intentionally, recklessly, with gross negligence, and with deliberate indifference to the rights and personal security of Plaintiff.  Each of them knew or should have known that their conduct, attitudes, actions, and omissions were a threat to Plaintiff and to their constitutionally and statutorily protected rights.  Despite this

4

knowledge, Defendants failed to take steps to protect Plaintiff and to ensure that their rights were adequately protected while in the custody of Defendants.

22.     At all times relevant hereto, each Defendant was the agent, representative, or employee of each other Defendant.  At all times relevant hereto, each Defendant was acting within the course and scope of said alternative agency, representation, or employment and was within the scope of their authority, whether actual or apparent.  At all times relevant hereto, each Defendant was the authorized agent, partner, servant, or contractor of each other Defendant, and the acts and omissions herein alleged were done by them acting through such capacity, within the scope of their authority, with the permission, ratification, approval, and consent of each other Defendant. Accordingly, each of them is jointly and severally liable to Plaintiff.

23.     Individual Defendants further directly assaulted, harassed, demeaned, degraded, and trafficked particular Plaintiffs as alleged herein.

**CONDITIONS PRECEDENT TO FEDERAL TORT CLAIMS ACT CLAIMS**

24.     Plaintiff brings claims under the Federal Tort Claims Act, asserted against the United States of America.

25.     Plaintiff exhausted these claims against the United States in accordance with the requirements of the FTCA.

26.     Plaintiff submitted a "Claim for Damage, Injury, or Death" to the BOP as a PREA victim involving staff at FCI Dublin in the sum of $10,000,000.00.  The BOP received her administrative claim on March 7, 2023.  By  September 7, 2023, six months after BOP received Plaintiff's administrative claim, the BOP has neither accepted nor rejected the claims.  Pursuant to 28 U.S.C. § 2675(a), Plaintiff considers this failure to act as a final denial of the claims.

**JURY DEMAND**

27.     Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs hereby demand a trial by jury on all issues and claims in this action that are so triable.

COMPLAINT

**FACTUAL ALLEGATIONS**

**I.     Federal Law Requires BOP to Take Action to Prevent and Appropriately Respond to Reports of Staff Sexual Misconduct**

28.     Prison staff sexual abuse of incarcerated people constitutes a form of torture that violates the Eighth Amendment.  *See Bearchild v. Cobban*, 947 F.3d 1130, 1144 (9th Cir. 2020). Such abusive sexual contact also violates federal criminal law.  *See, e.g.*, 18 U.S.C. §§ 2243, 2244.

29.     The Prison Rape Elimination Act ("PREA") of 2003 required the Attorney General to promulgate rules to prevent sexual abuse in prison facilities.  *See* 34 U.S.C. § 30307.  In 2012, the U.S. Department of Justice issued regulations designed to "prevent, detect, and respond to prison rape."  *See* 28 C.F.R. § 115, 77 Fed. Reg. No. 119 (June 20, 2012).  These regulations were immediately binding on BOP facilities.  *Id.*

30.     Under PREA regulations, BOP is required to "train all employees who may have contact with inmates" on the following: its "zero-tolerance policy for sexual abuse and sexual harassment"; prevention, reporting, detection, and response to such behavior; "the right of inmates to . . . be free from retaliation for reporting sexual abuse and sexual harassment"; signs and dynamics of sexual abuse in confinement, and "common reactions of … victims"; and "how to avoid inappropriate relationships with inmates."  *Id.* § 115.31(a).  The training must be "tailored to the gender of the inmates at the employee's facility," and the agency must conduct a refresher training on PREA standards every two years.  *Id.* § 115.31(b)–(c).  In off years from the training, "the agency shall provide refresher information on current sexual abuse and sexual harassment policies."  *Id.* § 115.31(c).

31.     PREA regulations mandate staff reporting.  BOP must "require all staff to report immediately . . . any knowledge, suspicion, or information regarding an incident of sexual abuse or sexual harassment that occurred in a facility, whether or not it is part of the agency; retaliation against inmates or staff who reported such an incident; and any staff neglect or violation of responsibilities that may have contributed to an incident or retaliation."  28 C.F.R. § 115.61(a).

32.     Per PREA regulations, administrative investigations of alleged sexual abuse by a staff member or incarcerated person are required to proceed "promptly, thoroughly, and

COMPLAINT

objectively for all allegations, including third-party and anonymous reports." *Id.* § 115.71(a). Investigators must be specially trained in sexual abuse investigations and must "gather and preserve direct and circumstantial evidence," including interviewing "alleged victims, suspected perpetrators, and witnesses" and "shall review prior complaints and reports of sexual abuse involving the suspected perpetrator." *Id.* § 115.71(c)-(b).  The agency is prohibited from determining an alleged victim's credibility based on their "status as inmate or staff." *Id.* § 115.71(e).  Investigations are further required to "include an effort to determine whether staff actions or failures to act contributed to the abuse." *Id.* § 115.71(f).  "The departure of the alleged abuser or victim from the employment or control of the facility or agency shall not provide a basis for terminating an investigation." *Id.* § 115.71(j).

33.     Substantiated allegations of potentially criminal conduct must be referred for prosecution and the agency must retain written reports of investigations for five years beyond the end of the staff member's employment. *Id.* § 115.71(h)–(i).  After investigating an incarcerated person's allegation that they were abused, BOP must inform that person of whether their allegation was found to be substantiated, unsubstantiated, or unfounded, even if the investigation was completed by another agency. *Id.* § 115.73(a)–(b).  The presumptive disciplinary sanction for substantiated allegations of sexual abuse is termination. *Id.* § 115.76(b).

34.     PREA also includes measures designed to prevent staff retaliation following incarcerated persons' reports of abuse.  PREA requires that BOP establish a policy to prevent retaliation, and that staff monitor retaliation, provide "emotional support services for inmates . . . who fear retaliation," and monitor for at least 90 days the conduct and treatment of incarcerated people who report abuse. *Id.* § 115.67.  These protective measures include strict limits on the use of administrative segregation.  The regulations provide: "Inmates at high risk for sexual victimization shall not be placed in involuntary segregated housing unless an assessment of all available alternatives has been made, and . . . there is no available alternative means of separation from likely abusers.  If a facility cannot conduct such an assessment immediately, the facility may" hold the individual in segregated housing for "less than 24 hours while conducting the assessment." *Id.* § 115.43(a).  Any incarcerated person placed in protective custody for this

purpose "shall have access to programs, privileges, education, and work opportunities to the extent possible." *Id.* § 115.43(b).

35.     Defendants repeatedly violated these regulations.  From inadequate training, to lack of confidential reporting mechanisms and access to outside support services, to failures in administrative investigations, widespread misuse of administrative segregation, and rampant staff retaliation, its actions and failures to act created an environment that exposed Plaintiff to an unconscionable risk of sexual violence.  As one survivor of staff sexual abuse at Dublin remarked at the trial of Warden GARCIA, PREA "really doesn't exist in Dublin."  Transcript at 401, *United States v. Garcia*, No. CR-21-00429-YGR (N.D. Cal. Nov. 29, 2022).

**II.     FCI Dublin Leadership and Staff Allowed Sexual Assault to Flourish**

36.     Eight former officers—including former Warden Ray Garcia and a former chaplain—have been charged with sexual misconduct for incidents spanning from 2019 into 2021, with more charges likely forthcoming.  *See United States v. Garcia*, No. 4:21-cr-00429-YGR (N.D. Cal.) (sentenced to 70 months in prison and 15 years of supervised released following jury trial); *United States v. Highhouse*, No. 4:22-cr-00016-HGS (N.D. Cal.) (sentenced to 84 months in federal prison and 5 months of supervised release following guilty plea); *United States v. Chavez*, No. 4:22-cr-00104-YGR-1 (N.D. Cal.) (sentenced to 20 months in federal prison and 10 years of supervised release following guilty plea); *United States v. Klinger*, No. 4:22-cr-00031-YGR (N.D. Cal.) (plead guilty to three counts of sexual abuse of a ward); *United States v. Bellhouse*, No. 4:22-cr-00066-YGR (N.D. Cal.) (sentenced to 63 months in federal prison and 5 years of supervised release following jury trial); *United States v. Smith*, No. 4:23-cr-00110-YGR-1 (charges pending); *United States v. Nunley*, No. 4:23-cr-00213-HSG (N.D. Cal.) (awaiting sentencing following guilty plea for 4 counts of sexual abuse of a ward, 5 counts of abusive sexual contact, and 1 count of false statements to a government agency); *United States v. Jones*, No. 4:23-cr-00212-HSG (N.D. Cal.) (sentenced to 96 months in federal prison and 10 years of supervised release following guilty plea for 6 counts of sexual abuse of a ward and 1 count of false statements to a government agency).

37.     Warden GARCIA was the associate warden at FCI Dublin between December 2018

COMPLAINT

and November 2020, and the warden of FCI Dublin from November 2020 to July 2021 – a time that overlapped with Plaintiff being abused by Defendant SINCLAIR and Officers JONES, CHAVEZ, and SMITH.  As the warden, GARCIA was responsible for safekeeping, care, protection, discipline, programming, and release of inmates incarcerated at FCI Dublin.  Warden GARCIA was also responsible for hiring, training, and supervising/managing staff, and determining operating procedures and policies.

38.    Warden GARCIA was found guilty of three counts of having sexual contact with an incarcerated person, four counts of abusive sexual contact, and one count of lying to the FBI. Warden GARCIA was sentenced to 5 years and 10 months in prison.

39.    In July 2023, Officer JONES plead guilty to sexual abuse.  *See* Plea Agreement, *United States v. Jones*, No. 4:23-cr-00212-HSG (N.D. Cal. July 13, 2023).  Officer JONES admitted to sexually assaulting five incarcerated women.

40.    In early 2022, Officer CHAVEZ was charged with sexually abusing women in his custody.  Officer CHAVEZ pled guilty to sexually assaulting an incarcerated woman multiple times.  The federal criminal investigation has made clear that FCI Dublin staff explicitly target immigrant women for abuse, leveraging the threat of deportation. In relevant instances, officers told survivors that they "looked in their files" and knew that they were subject to immigration detainers, or they threatened to notify immigration authorities if survivors reported their abuse. For example, Officer CHAVEZ sexually abused multiple Mexican immigrant women, and has even traveled to Mexico to visit a woman that he abused after she was released and deported.  He plead guilty and was sentenced to 20 months in federal prison and 10 years of supervised release. *United States v. Chavez*, No. 4:22-cr-00104-YGR-1 (N.D. Cal.).

41.    In May 2023, Officer SMITH was also indicted on 12 counts for sexually abusing three incarcerated women and is currently awaiting trial. Officer Smith—widely known as "Dirty Dick Smith"—abused dozens of incarcerated women beginning as early as 2015 and continuing until at least August 2021

42.    Warden GARCIA led training on the Prison Rape and Elimination Act and chaired the audit of FCI Dublin under the PREA.  Thus, the man responsible for reporting incidents to the

1  government and teaching inmates how to report rape was in fact a serial rapist of incarcerated

2  people, and he was clearly tolerating and allowing abuse by many more of his underlings,

3  including Defendant SINCLAIR, and Officers JONES, CHAVEZ, and SMITH.

4          43.     Warden GARCIA had actual knowledge that the other correctional officers under

5  his supervision were sexually assaulting inmates before and after Plaintiff was abused.  Despite

6  this knowledge, Warden GARCIA did not do anything to stop it, even though he had a duty to do

7  so.  Due to the fact that Warden GARCIA had knowledge of prior sexual abuse at FCI and failing

8  to do anything about it, it allowed FCI agents, representatives, and employees to abuse Plaintiff.

9          44.     Warden GARCIA had actual knowledge that inmates complained about the

10  assaults.  Warden GARCIA knew or should have known that the inmates were subjected to

11  retaliation.  Because Defendant did not investigate complaints of abuse and harassment and did

12  not do anything to stop it, inmates, including Plaintiff, were abused.  Had Warden GARCIA taken

13  reasonable actions, which he was under a legal duty to perform, Plaintiff would not have been

14  abused.  Warden Garcia's intentional indifference to inmate abuse was a substantial factor in

15  Plaintiff suffering abuse.

16          45.     PREA guidelines and FCI Dublin policies and procedures required all inmate

17  complaints of sexual assault and sexual abuse filed or reported internally be reported to Warden

18  GARCIA.  During GARCIA's tenure, complaints of sexual assaults of inmates by correctional

19  officers and/or staff were reported.

20          46.     With knowledge of prior abuse against inmates by FCI Dublin, representatives, and

21  employees, Warden GARCIA failed to protect the inmates and turned a blind eye.  Such behavior

22  set the tone for rape culture at FCI Dublin, garnering Garcia and his subordinate correctional

23  officers and employees the nickname – "the Rape Club."

24          47.     Further, Warden GARCIA and others inadequately supervised and trained the

25  prison's correctional officers and other employees, including Defendant SINCLAIR, and Officers

26  JONES, CHAVEZ, and SMITH.  The UNITED STATES failed to supervise which was a

27  substantial factor in causing Plaintiff's abuse.

28          48.     Defendants repeatedly violated the law.  From inadequate training, to lack of

COMPLAINT

confidential reporting mechanisms and access to outside support services, to failures in administrative investigations, widespread misuse of administrative segregation, and rampant staff retaliation, its actions—and failures to act—created an environment that exposed Plaintiff to an unconscionable risk of sexual violence.  As one survivor of staff sexual abuse at Dublin remarked at the trial of Warden GARCIA, PREA "really doesn't exist in Dublin."  Transcript at 401, *United States v. Garcia*, No. CR-21-00429-YGR (N.D. Cal. Nov. 29, 2022).

### III. Plaintiff was Harassed and Assaulted By Defendant SINCLAIR While She Worked In the Kitchen

49.     Plaintiff was incarcerated at FCI Dublin beginning on or around September 2019.

50.     Plaintiff is a longtime Legal Permanent Resident and the single mother of two young U.S. citizen children.  She is a survivor of years of childhood sexual abuse by her stepfather.  While incarcerated at FCI Dublin, Plaintiff worked in the kitchen where she experienced and witnessed staff sexual abuse.

51.     While incarcerated at FCI Dublin, Defendant SINCLAIR sexually harassed and physically assaulted Plaintiff taking advantage of his role as an officer in charge of the prison kitchen where Plaintiff worked.  During her time at FCI Dublin, the back of the kitchen was known as a main area where officers would take women to engage in sexual activities.

52.     Defendant SINCLAIR began sexually harassing Plaintiff by persistently attempting to convince her to go to the backroom of the kitchen, where there are not cameras, to "show her his tattoos" in an attempt to expose himself to her.  On several occasions, he also rubbed his arms on her shoulders and back to motion for her to come with him to the back.

53.     Defendant SINCLAIR eventually began ordering Plaintiff to do various things for him like "[g]et down on [her] knees" and "bend over."  When Plaintiff refused, Defendant SINCLAIR approached Plaintiff from behind and grabbed her buttocks.

54.     In early 2021, Plaintiff again refused Defendant SINCLAIR's prompts to "go to the back" with him to engage in sexual conduct.  Plaintiff replied, "No, I am not like that."  After Plaintiff refused his advances, he began verbally abusing her.  He called her a "bitch" to other officers, including Officer Poole, who later told Plaintiff that Defendant SINCLAIR called her a

COMPLAINT

"bitch" on a number of occasions.  After Defendant SINCLAIR realized Plaintiff was not going to give him attention, he moved on to sexually abuse and harass another incarcerated woman in the prison.

**III.     Officers CHAVEZ, JONES, and SMITH Subjected Plaintiff to Physical and Verbal Abuse as Retaliation.**

55.     While incarcerated at FCI Dublin, Officers CHAVEZ, JONES, and SMITH retaliated against Plaintiff because they knew she was aware that she witnessed them have sex with other people incarcerated at the prison.

56.     In December 2019, Plaintiff saw Officer CHAVEZ have sex with other women in the warehouse.  After learning that Plaintiff saw him having sex them, Officer CHAVEZ retaliated against her by grabbing her shirt and shoving her against the wall in the kitchen.  During this incident, Officer CHAVEZ violently shook her in front of others.  This attack was unprompted, and she was fearful of what else he could do to her.

57.     Plaintiff also witnessed Officer JONES have a sexual relationship with her cellmate.  After Officer JONES stopped having sex with Plaintiff's cellmate, he began acting cruel and abusive towards Plaintiff.  He pushed Plaintiff against the oven while it was on and she was burned as a result.  Because he knew Plaintiff knew about their relationship, Officer JONES often screamed at Plaintiff to demean her, calling her "a fucking wetback."  He also threatened her saying, "I will slap the shit out of you if you ever say anything."  After Officer JONES stopped having sex with Plaintiff's cellmate, Defendant SINCLAIR, and Officers JONES and Pool fired her from the kitchen.

58.     Even more, Officer JONES told one woman he was engaging in sexual acts with to "do whatever you need to put [Plaintiff] in the SHU."  As a result, that woman told officers that Plaintiff got into a fight with her.  Plaintiff was put in the SHU for a month although Lieutenant Putman later confirmed that Plaintiff was never in the room where the alleged fight happened.

59.     Officer SMITH was sexually harassing Plaintiff's cellmate.  On one occasion, Officer SMITH locked Plaintiff and her cellmate in their cell and said he would not open the door until her cellmate showed him her breasts.  After she finally showed him her breasts, Officer

1    JONES unlocked the door and let them both out.

2    **IV.    Plaintiff Reported Her Abuse to the Special Investigative Specialist and the FBI.**

3    60.    Plaintiff was fearful to report her experience because of all the retaliation she

4    already faced.  She was physically assaulted by Officer CHAVEZ, called racial epithets and

5    physically threatened by Officer JONES, verbally assaulted by Defendant SINCLAIR, fired from

6    her job, and put in the SHU as retaliation.  Plaintiff was terrified of what else these officers could

7    do to her if she reported all of the abuse and harassment she experienced and witnessed.  She also

8    knew there was a rampant culture of protecting abusive officers at all levels of the prison so she

9    could not trust any officers.  Plaintiff believed all means of reporting abuse was not confidential,

10    and the retaliation she experienced bolstered that belief.

11    61.    In early 2022, Lieutenant Putnam, the Special Investigative Specialist (SIS), called

12    Plaintiff to speak with him about her experience with sexual harassment but she was scared to

13    speak with him because she knew Lieutenant Putnam and Officer Pool were friends so he didn't

14    trust them. She told Putnam a few details but did not feel comfortable telling him everything.  A

15    month later, she also spoke to the FBI.  After she spoke to Putnam, Officers JONES and Pool, and

16    Defendant SINCLAIR began calling Plaintiff a "snitch" whenever she walked past them.  This

17    only strengthened her belief that reporting at any level of the BOP was never safe.

18    **CLAIMS FOR RELIEF**

19    **FIRST CLAIM FOR RELIEF**
    *Plaintiff Against Defendant SINCLAIR*
    **(Eighth Amendment, Cruel and Unusual Punishment)**

20    62.    Plaintiff incorporates by this reference the allegations contained in the preceding

21    paragraphs as if set forth fully herein.

22    63.    Defendant SINCLAIR subjected Plaintiff to serious bodily harm as defined by the

23    Eight Amendment when they sexually assaulted and harassed Plaintiff and provided or withheld

24    privileges to coerce sexual favors from Plaintiff.

COMPLAINT

64.     Defendants' actions and failures described here caused the Plaintiff's physical, emotional, and constitutional harms, and she has a claim for damages for such violations under ongoing deprivation of rights secured by the United States Constitution under the Eighth Amendment.

65.     This claim for damages is cognizable under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971) because it claims the same harm and injury as recognized in *Carlson v. Green* 446 U.S. 14 (1980) and *Farmer v. Brennan* 511 U.S. 825 (1994), two recognized *Bivens* contexts.

**CLAIMS FOR RELIEF UNDER THE FTCA**

**SECOND CLAIM FOR RELIEF**
*Plaintiff Against the United States*
**(Sexual Assault; Sexual Battery – Cal. Civ. Code § 1708.5)**

66.     Plaintiff incorporates by this reference every allegation in the preceding paragraphs as if fully set forth herein.

67.     Plaintiff brings this claim against the United States under the FTCA based on acts and/or omissions of Defendant United States and all other Defendants, while working in their official capacities at FCI Dublin.  Defendants are employees of BOP and at all relevant times were acting within the scope of their employment as federal employees in their official uniforms during work hours.

68.     A person commits a sexual battery when he acts with the intent to cause a harmful or offensive contact with another by use of the person's intimate part, and a sexually offensive contact with that person directly or indirectly results.  Cal. Civ. Code § 1708.5(a)(2).

69.     Defendants subjected Plaintiff  to sexual acts, with the intent to cause harmful or offensive contact.  Such contact with Plaintiff was deeply offensive to their personal dignity and would offend a person of ordinary sensitivity.

70.     As a direct and proximate result of the foregoing, Plaintiff suffered psychological trauma, distress, anxiety, depression, loss of quality of life and dignity, as well as medical and economic injuries.

71.     Pursuant to the FTCA, Plaintiff is entitled to recover damages from the United

14

COMPLAINT

1  States for the wrongful acts/omissions of its employees.

2                                **THIRD CLAIM FOR RELIEF**
                                  *Plaintiff Against the United States*
3        **(Intentional Infliction of Emotional Distress ("IIED") – California common law)**

4        72.     Plaintiff incorporates by this reference every allegation in the preceding paragraphs

5  as if fully set forth herein.

6        73.     Plaintiff brings this claim against the United States under the FTCA based on acts

7  and/or omissions of Defendant United States and all other Defendants while working in their

8  official capacities at FCI Dublin.  Defendants are employees of BOP and at all relevant times were

9  acting within the scope of their employment as federal employees in their official uniforms during

10 work hours.

11       74.     A person is liable for IIED when the defendant engages in outrageous conduct,

12 when the defendant intended to cause plaintiff to suffer emotional distress or engaged in the

13 conduct with reckless disregard to the probability of causing plaintiff to suffer emotional distress,

14 the plaintiff suffered emotional distress, and the outrageous conduct was a cause of the severe

15 emotional distress.

16       75.     Defendant United States, individually or through its agents, servants, contractors,

17 and/or employees, engaged in extreme and outrageous conduct by subjecting Plaintiff to sexual

18 acts while incarcerated in their custody, through the above-described acts and omissions.

19       76.     Plaintiff's injuries and damages were caused by intentional torts perpetrated by

20 Defendants.  Under 28 U.S.C. § 2680(h), Defendant United States is liable for intentional torts

21 perpetrated by its agents, including correctional officers, that occurred within the scope of their

22 employment under color of federal law.

23       77.     At all relevant times, Defendants were acting under color of law by supervising,

24 disciplining, overseeing, monitoring, controlling, directing, restraining, and imprisoning Plaintiff

25 within the scope of their employment for the United States.

26       78.     Defendants used their authority as law enforcement officers to sexually assault and

27 harass Plaintiff, and as a direct and proximate cause of this conduct Plaintiff has suffered

28 psychological trauma, distress, anxiety, depression, loss of quality of life and dignity, as well as

COMPLAINT

1   medical and economic injuries.

2       79.      Pursuant to the FTCA, Plaintiff is entitled to recover damages from the United

3   States for the wrongful acts/omissions of its employees.

4                            **FOURTH CLAIM FOR RELIEF**
                          *Plaintiff Against the United States*
5              **(Sexual Harassment - Cal. Civ. Code § 51.9)**

6       80.      Plaintiff incorporates by this reference every allegation in the preceding paragraphs

7   as if fully set forth herein.

8       81.      Plaintiff brings this claim against the United States under the FTCA based on acts

9   and/or omissions of Defendant United States and all other Defendants while working in their

10  official capacities at FCI Dublin.  Defendants are employees of BOP and at all relevant times were

11  acting within the scope of their employment as federal employees in their official uniforms during

12  work hours.

13      82.      A person is liable for sexual harassment when a special relationship exists between

14  a plaintiff and person where there is a considerable imbalance of power; the defendant has made

15  sexual advances, solicitations, sexual requests, demands for sexual compliance by plaintiff, or

16  engaged in other verbal, visual, or physical conduct of a sexual nature or hostile nature based on

17  gender, that were unwelcome and pervasive or severe; and the plaintiff has suffered or will suffer

18  economic loss or personal injury including emotional distress or violation of a statutory or

19  constitutional right.

20      83.      There exists in FCI Dublin, as all prisons, an extreme imbalance of power between

21  the officers and the incarcerated individuals.  Officers control every aspect of incarcerated persons

22  lives.  In addition to this always-present imbalance of power, the problem is compounded by

23  retaliation against those who report misconduct.

24      84.      For purposes of Cal. Civ. Code § 51.9, a special relationship exists/existed between

25  Defendants and Plaintiff due to the coercive power of the officers' positions.

26      85.      Defendants in this special relationship with Plaintiff violated Cal. Civ. Code § 51.9

27  by repeatedly sexually abusing her.

28      86.      Plaintiff has suffered emotional distress as a result, including psychological trauma,

                                          16

COMPLAINT

distress, anxiety, depression, loss of quality of life and dignity, as well as medical and economic injuries.

87.     Pursuant to the FTCA, Plaintiff is entitled to recover damages from the United States for the wrongful acts/omissions of its employees.

**FIFTH CLAIM FOR RELIEF**
***Plaintiff Against the United States***
**(Tom Bane Civil Rights Act– Cal. Civ. Code § 52.1)**

88.     Plaintiff incorporates by this reference every allegation in the preceding paragraphs as if fully set forth herein.

89.     Plaintiff brings this claim against the United States under the FTCA based on acts and/or omissions of Defendant United States and all other Defendants while working in their official capacities at FCI Dublin.  Defendants are employees of BOP and at all relevant times were acting within the scope of their employment as federal employees in their official uniforms during work hours.

90.     A person interferes with another's civil rights if the person uses or attempts to use threats, intimidation, or coercion to interfere with the exercise or enjoyment of rights secured by the Constitution or state or federal laws.

91.     Speech alone is sufficient where the threatened person reasonably fears violence because the person threatening had the apparent ability to carry out the threat.  Because of the coercive, and sometimes violent, nature of a prison and the fact that survivors had seen retaliation before, Plaintiff reasonably feared violence by Defendants.

92.     Defendant United States through its agents, servants, contractors, and/or employees violate Plaintiff's rights, including but not limited to, their right of protection from bodily harm and sexual violation, imposition of punishment without due process, and cruel and unusual punishment.  Defendants violated these rights by threats, intimidation, or coercion.

93.     As a direct and proximate result of the foregoing, Plaintiff has suffered emotional distress as a result, including psychological trauma, distress, anxiety, depression, loss of quality of life and dignity, as well as medical and economic injuries.

94.     Pursuant to the FTCA, Plaintiff is entitled to recover damages from the United

17

COMPLAINT

States for the wrongful acts/omissions of its employees.

### SIXTH CLAIM FOR RELIEF
*Plaintiff Against the United States*
**(Gender Violence – Cal. Civ. Code § 52.4)**

95.     Plaintiff incorporates by this reference every allegation in the preceding paragraphs as if fully set forth herein.

96.     Plaintiff brings this claim against the United States under the FTCA based on acts and/or omissions of Defendant United States and all other Defendants while working in their official capacities at FCI Dublin.  Defendants are employees of BOP and at all relevant times were acting within the scope of their employment as federal employees in their official uniforms during work hours.

97.     Gender violence is a form of sex discrimination and includes a physical intrusion or physical invasion of a sexual nature under coercive conditions, whether or not those acts have resulted in criminal complaints, charges, prosecution, or conviction.

98.     The conditions at FCI Dublin are that of coercive conditions, as evident by officers regularly withholding things like out of cell time or personal property in exchange for sexual favors.  Further, officers exchanged sexual favors for perks that are not normally available to inmates such as treats, alcohol, and the ability to roam the halls.

99.     Defendants discriminated against Plaintiff based on her sex and/or gender when they repeatedly sexually abused her, physically intruding and invading upon her bodies under coercive conditions.

100.    As a direct and proximate result of the foregoing, Plaintiff has suffered emotional distress as a result, including psychological trauma, distress, anxiety, depression, loss of quality of life and dignity, as well as medical and economic injuries.

101.    Pursuant to the FTCA, Plaintiff is entitled to recover damages from the United States for the wrongful acts/omissions of its employees.

### SEVENTH CLAIM FOR RELIEF
*Plaintiff Against the United States*
**(Invasion of Privacy – California common law)**

COMPLAINT

102.    Plaintiff incorporates by this reference every allegation in the preceding paragraphs as if fully set forth herein.

103.    Plaintiff brings this claim against the United States under the FTCA based on acts and/or omissions of Defendant United States and all other Defendants while working in their official capacities at FCI Dublin.  Defendants are employees of BOP and at all relevant times were acting within the scope of their employment as federal employees in their official uniforms during work hours.

104.    The elements of invasion of privacy are (1) whether the defendant intentionally intruded, physically or otherwise, upon the solitude or seclusion, private affairs or concerns of the plaintiff; (2) the intrusion was substantial, and of a kind that would be highly offensive to an ordinarily reasonable person; and (3) the intrusion caused plaintiff to sustain injury, damage, loss, or harm.

105.    Defendants intentionally and substantially intruded, both physically and otherwise, upon Plaintiff's seclusion when they repeatedly sexually abused her.

106.    Such intrusions were substantial and highly offensive to an ordinarily reasonable person due to their sexual and degrading nature.

107.    As a direct and proximate result of the foregoing, Plaintiff has suffered emotional distress as a result, including psychological trauma, distress, anxiety, depression, loss of quality of life and dignity, as well as medical and economic injuries.

108.    Pursuant to the FTCA, Plaintiff is entitled to recover damages from the United States for the wrongful acts/omissions of its employees.

**EIGHTH CLAIM FOR RELIEF**
***Plaintiff Against the United States***
**(Negligence – California common law)**

109.    Plaintiff incorporates by this reference every allegation in the preceding paragraphs as if fully set forth herein.

110.    Plaintiff brings this claim against the United States under the FTCA based on acts and/or omissions of Defendant United States and all other Defendants while working in their official capacities at FCI Dublin.  Defendants are employees of BOP and at all relevant times were

19

acting within the scope of their employment as federal employees in their official uniforms during work hours.

111.    At all relevant times, Defendant United States hired various correctional and/or administrative personnel at FCI Dublin, including but not limited to wardens, associate wardens, captains, lieutenants, unit managers, counselors, correctional officers, and investigators.

112.    At all relevant times, FCI Dublin personnel, including individual Defendants, held themselves out to Plaintiff as correctional and/or administrative personnel with the knowledge, capacity, and ability to provide due care in accordance with standards of reasonable care common and acceptable in the community.

113.    **Duty.** United States and all other Defendants had a custodial duty, as well as a mandatory statutory obligation under PREA and BOP policy, to protect Plaintiff, who was incarcerated by the United States, from foreseeable harm, including sexual abuse.  This duty was non-delegable.

114.    BOP policy forbids staff in engaging with sexual activity with inmates and staff may not allow other people to engage in sexual activity.  BOP policy makes clear that all sexual activity with inmates, even non-physical, is against policy.  BOP states that there is no such thing as consensual sex between staff and inmates.

115.    United States and all other Defendants also had a general duty of care to Plaintiff to act as a reasonable prudent person would under similar circumstances.

116.    It was the Defendants' duty to maintain, operate, and control FCI Dublin as a safe and secure space for incarcerated people.

117.    It was the Defendants' duty to protect incarcerated people from foreseeable harm inflicted by BOP personnel.

118.    **Breach of Duty.** The United States, individually or through its agents, servants, contractors, and/or employees acting within the scope of their employment, breached those duties by failing to supervise and operate FCI Dublin in a manner that would have prevented ongoing sexual abuse and retaliation against Plaintiff.

119.    A reasonable administrator would have complied with PREA regulations, including

1   safeguarding against retaliation for those who report misconduct.

2       120.    A reasonable administrator would also not have exposed Plaintiff to the danger of

3   ongoing sexual abuse.

4       121.    Agents, servants, contractors, and/or employees of Defendant United States knew

5   or should have known about the ongoing sexual abuse against Plaintiff, and in breaching their duty

6   directly exposed Plaintiff to an unreasonable risk of bodily injury and sexual assault.

7       122.    Despite notice, Defendant United States, through its employees, did not take

8   reasonable, available measures to abate the risk of sexual abuse to Plaintiff in violation of federal

9   regulations and BOP policy.

10      123.    The United States, through its employees also failed to train, retain, and supervise

11  officers as well as monitor and investigate them.

12      124.    When the employer is aware of its employees' tortious conduct, as it was here, and

13  it ignores or assists in it, retention of employees does not represent legitimate policy

14  considerations warranting discretion.

15      125.    At all relevant times, each of the Defendants stood in such a relationship with the

16  other Defendants as to make each of the Defendants liable for the acts and omissions of all other

17  Defendants in regard to their treatment of Plaintiff.

18      126.    **Causation.** The United States' negligence in administering FCI Dublin is a direct

19  and proximate cause of Plaintiff's injuries, including psychological trauma, distress, anxiety,

20  depression, loss of quality of life and dignity, as well as medical and economic injuries.

21      127.    Officers' employment at FCI Dublin was essential to their commission of tortious

22  misconduct, which would not have happened absent their employment and privileges.

23      128.    Defendant officers' conduct was grossly negligent as they showed complete

24  disregard for rights and safety of Plaintiff.

25      129.    It was foreseeable to FCI Dublin personnel that Plaintiff was at risk of imminent

26  serious harm including sexual abuse.

27      130.    Pursuant to the FTCA, Plaintiff is entitled to recover damages from the United

28  States for the wrongful acts/omissions of its employees.

COMPLAINT

**NINTH CLAIM FOR RELIEF**
*Plaintiff Against the United States*
**(Negligent Infliction of Emotional Distress ("NIED") – California common law)**

131.    Plaintiff incorporates by this reference every allegation in the preceding paragraphs as if fully set forth herein.

132.    Plaintiff brings this claim against the United States under the FTCA based on acts and/or omissions of Defendant United States and all other Defendants while working in their official capacities at FCI Dublin.  Defendants are employees of BOP and at all relevant times were acting within the scope of their employment as federal employees in their official uniforms during work hours.

133.    The elements of an NIED claim are as follows: (1) the defendant engaged in negligent conduct/a willful violation of a statutory standard; (2) the plaintiff suffered serious emotional distress; and (3) the defendant's negligent conduct/willful violation of statutory standard was a cause of the serious emotional distress.

134.    Defendant officers and the United States engaged in negligent conduct and willful violations of statutory standards by repeatedly sexually abusing Plaintiff, constituting both extreme and outrageous behavior and the negligence.

135.    The United States' negligence in administering FCI Dublin is a direct and proximate cause of Plaintiff's injuries, including psychological trauma, distress, anxiety, depression, loss of quality of life and dignity, as well as medical and economic injuries.

136.    Pursuant to the FTCA, Plaintiff is entitled to recover damages from the United States for the wrongful acts/omissions of its employees.

**TENTH CLAIM FOR RELIEF**
*Plaintiff Against the United States*
**(Assault and Battery - California common law)**

137.    Plaintiff incorporates by this reference every allegation in the preceding paragraphs as if fully set forth herein.

138.    Plaintiff brings this claim against the United States under the FTCA based on acts and/or omissions of Defendant United States and all other Defendants, while working in their official capacities at FCI Dublin.  Defendants are employees of BOP and at all relevant times were

acting within the scope of their employment as federal employees in their official uniforms during work hours.

139.    Assault occurs when (1) a defendant acts, intending to cause harmful or offensive contact, and (2) the plaintiff reasonably believes that they were about to be touched in a harmful or offensive manner. *See, e.g.*, Judicial Council of California, California Civil Jury Instructions at 845 (2024).

140.    A person committed a battery if (1) they touched a plaintiff with the intent to cause harm, (2) the plaintiff did not consent to the touching, and (3) the plaintiff was harmed by the touching. *Id.* at 842.

141.    Defendants subjected Plaintiff to assault and battery when Officer CHAVEZ grabbed Plaintiff, making unconsented physical contact with her, and violently shaking her.

142.    As a direct and proximate result of the foregoing, Plaintiff suffered immediate physical and emotional harm.

143.    Pursuant to the FTCA, Plaintiff is entitled to recover damages from the United States for the wrongful acts/omissions of its employees.

WHEREFORE, Plaintiff prays for judgment against Defendants as set forth below.

## PRAYER FOR RELIEF

Plaintiff prays for judgment against Defendants, and each of them, as follows:

144.    An award of compensatory, punitive, and nominal damages to Plaintiff in an amount to be determined at trial;

145.    An award to Plaintiff, pursuant to 42 U.S.C. §§ 1988 and 12205 of the costs of this suit and reasonable attorneys' fees and litigation expenses; and

146.    For such other and further relief as this Court may deem just and proper.

COMPLAINT

Respectfully submitted,

DATED:  March 7, 2024                ARNOLD & PORTER KAYE SCHOLER LLP

By:  */s/ Carson D. Anderson*
      Stephen Cha-Kim
      Carson D. Anderson
      Natalie Steiert

DATED:  March 7, 2024                RIGHTS BEHIND BARS

By:  */s/ Oren Nimni*
      Ms. Amaris Montes (she/her)
      Mr. Oren Nimni (he/him)

Attorneys for Plaintiff

24

COMPLAINT